May it please the court, Daniel Reback on behalf of plaintiff and appellant Christopher Gordon. May it please reserve two minutes of rebuttal time. Honey badger don't care. That's the catchphrase made famous by my client from his popular video, which has been viewed more than 86 million times on YouTube. The only reason, the only reason, defendants made their seven greeting cards in this case, and the only reason why they used my client's mark in those seven greeting cards, was simply to capitalize and trade off the goodwill of my client. Your mark includes, is just the phrase, honey badger don't care. That's the registered trademark. Okay, you don't have any mark in any images of a honey badger. That's correct. And you did not trademark the other controversial statement, we'll say. I was struggling with how to refer to that phrase, but that's correct. There's really two pieces of evidence that I think are... Is there any reason you didn't trademark that one as well? I was not counsel at the time for Mr. Gordon. But you did use it in the video, or your client did use it in the video. That's correct. As I recall. That's correct, and not only does he use both phrases in the video, but the abundance of evidence submitted shows that those are the two most popular phrases from the video. There have been articles throughout the country in very popular magazines, in newspapers, in internet articles throughout the country that link those two phrases with my client. Those are my client's two key phrases. In fact, YouTube commemorated one of their anniversaries. But the whole Rogers Doctrine would seem to indicate that that alone isn't enough, that the whole Rogers Doctrine is about being able to use, modify, et cetera, trademarked phrases. Correct. Is it not? But there are significant limitations on that doctrine. And I think in light of the court's recent decision in Empire, candidly, some of the arguments in our brief are no longer apt. However, three remain. One, defendant's greeting cards are not expressive works under the Rogers test. And Justice Bybee, your opinion in Brown aptly noted that not every book, not every play can be considered an expressive work. You have to look at each work on its cover by itself. And I respectfully submit that looking at defendant's seven greeting cards in this case, they are not expressive works at the height of the First Amendment. How could it not be expressive? I don't recall saying in Brown that books and plays couldn't be expressive. That would seem to be the core of First Amendment expression. But how can we not say that this is expressive? Your client actually trademarked a phrase, and he's here today because he thinks that those particular words in that sequence are of commercial and literary value. There are people who want them on T-shirts. There are people who want them on greeting cards. There are people who view videos with those phrases. And it's precisely because it was a clever phrase. It was a clever phrase, but I think the question is, is whether or not defendant's seven greeting cards in this case are expressive works. And just one greeting card, the critter card, which I referred to at length in our brief, I don't – there's not a plot here. I can't decipher a plot. I don't know – there's no characters. There's no dialogue. If you take that, then wouldn't your cards not be entitled to First Amendment protection? In what sense are they more expressive than these cards? Or does it not matter to you whether your cards have First Amendment protection? It's not the issue before the court, and we're not suing over that. Well, but, I mean, we do try to develop doctrine, don't we? Yes, Your Honor. To be honest, I don't know whether or not the First Amendment would interplay with my client's cards. It depends what cards we're talking about. Whatever on my client's cards, does he have a dialogue or a character or a plot in his cards? But my point simply is that the defendant's cards in this case, they just say, it's your birthday. So you say that the government could just ban the sale of those cards? That would be perfectly permissible. I don't know – not about banning the sale, but what they should have done. Well, why couldn't – if it's not – if the cards are not entitled to First Amendment protection, what would stop the government from banning the sale of them? I would – I think your argument makes no sense on that point. What are the other ones that you have? You said you have three that survive Empire. Why don't you move on to number two? Moving on to the artistic relevance prong, there is no artistic relevance whatsoever to using my client's trademark in these cards. Mr. Drape, at his deposition, was – Mr. Drape, Tom Drape created all the seven cards, and he testified he's the sole person responsible for creating the seven cards at his deposition. Do you agree that that issue is ultimately a jury question? Is that the – is that what you're ultimately hoping to get from us, is a reversal and a remand for a jury trial on the question of a – Exactly, Your Honor, and I think at minimum, at minimum, it presents a jury question as to Mr. Drape's credibility because he's the sole person who created the text in these cards, and when asked at his deposition, why did you use my client's mark, he replied, I don't remember. But if the question is artistic relevance, don't we get that by looking at the documents, not as to whether somebody is or is not a good guy who brought them up? Well, that may be one way. That may be one way. Another way – As I understand the Ninth Circuit doctrine is that the relevance between the trademark and the contested material just has to be – isn't the exact language greater than zero? It doesn't have to be very much at all. That's the test, and I would submit that based on looking at the cards, there is no artistic relevance towards using my client's trademark in a card that says the election is coming. What does my client's trademark phrase, honey badger don't care, have to do with an election? Somebody, I don't know whether it's in the record, used the phrase aggressively apathetic, which sounds kind of odd, but isn't that sort of artistic? The honey badger doesn't care or doesn't give a shit. The only reason to use that phrase would be to capitalize off the cachet and popularity of my client's mark at the time. Isn't that particularly pungent or poignant? I'm not sure I could come up with a better phrase to express the idea of being, as I said, aggressively apathetic. Going back to Justice Watford's comment about this being a jury question, I think the case that's most on point is from your circuit, Your Honor, the Parks case in the Sixth Circuit. In the Sixth Circuit, Outkast, the music duo, used Rosa Parks' name for the title of her song, and just like our case, Outkast testified that the composers did not intend for the song to be about Ms. Parks, and Mr. Drape says, well, he used the mark without any intention of referring to Mr. Gordon whatsoever, and also the lyrics of the song and Rosa Parks were not about her, and that's the same exact case here. And the Sixth Circuit said that, suggested that Outkast had chosen an irrelevant title that, quote, unquestionably enhanced the song's potential sale to the consuming public, and a reasonable person could find that the song Rosa Parks failed the Rogers test because the highly questionable artistic relevance to the title of Rosa Parks to the song. And I think that's precisely our case, where this is a jury question at minimum, considering, one, Mr. Drape's testimony, and two, just from looking at the cards, the cards are not about my client. Mr. Drape has disavowed any relevance whatsoever towards my client, and I think Parks is on point here from the Sixth Circuit that, at minimum, this deserves to be put in front of a jury, and Mr. Drape should be put on the witness stand, and he can explain to the jury, and my client should have his day in court on this issue. I mean, that seems perfectly sensible in terms of a position to take, but what would the jury instructions look like? That's what I struggle with because we have so few cases in which this issue has been punted to a jury. So do you have a sense as to what – I guess you'll try this case, I guess? I don't know. What's the jury going to be instructed to find? The defendant would probably take the first stab at drafting the jury instruction on the First Amendment defense. But, you know, it would track the elements of the Rogers test and artistic relevance. Don't you have the burden? If this were to go to trial, wouldn't you have the burden of proving that there is no artistic relevance? I don't know if the case law delineates that. I would submit that it's an affirmative defense, and the defendant would have the burden on that issue. Why? And granted, well, because it's an affirmative defense, and it's not my burden. It's to prove my case, the likelihood of confusion. But the Rogers test essentially supplants the burden that you would otherwise bear to prevail on your claim, right? It just – it's kind of a – I mean, we're importing this new test that supplants the test that would apply, let's say we're arguing about soap or something, you know, some non-First Amendment-protected product. And so I would have assumed that, no, you would still bear the burden of showing that there was no artistic relevance. I think it's an interesting question. I don't think it's settled from the case law. I would submit my position would be that it's their burden as an affirmative defense. They would have to show some artistic relevance. So just – I'm sorry to cut you off, but so what exactly would you have to prove in your case in chief? My case in chief, I would have to prove, like any trademark case, the registered validity of the trademark and the likelihood of confusion. And if the defense wants to put forth an affirmative defense, it's their burden to establish it. But the likelihood of confusion test is supplanted by Rogers, right? That's what I'm confused about your position here. Assuming that it's – we're talking about an expressive work. Yeah, well, so I'm – let's say you win. We say this is – well, you lose on the question whether this is an expressive work. We say that this clearly is expressive. It's protected by the First Amendment. So, therefore, Rogers comes into play, right? And we say there's a jury question as to whether there was any artistic relevance. Case goes to trial. That's what I'm at. That's why I would have – I assume that you had thought through far enough to say yes, and then here's what my case in chief would look like. Here's what I would have to prove. Here's what the jury would be instructed on. It sounds like you haven't kind of thought through those extra steps yet. Assuming there's a reversal with the Ninth Circuit here today. That's what you want. So I thought you had come in optimistic and ready to go. I am ready to go. Once the case is reversed, counsel and I will work out the jury instructions appropriately. Again, for my position is that the burden would be on them. At trial, I can establish. This is an interesting question, counsel. It's not one that I had thought about, who has the relative burden of proof. Let's think about this and see whether you've got the right argument here. You've raised the trademark claim, so it would be your burden to come in and say there's a likelihood of confusion here. It does seem to me that it might well be the defendants who are perfectly free to waive any claims about the Rogers test. That is, if they don't raise the Rogers test, they've forfeited it, right? Entirely correct, Your Honor. And so if they're going to raise the Rogers test and say, well, we have a First Amendment right to do this, then it does seem that that might fit the category of an affirmative defense, which case it might well be their burden to show the artistic relevance. That's my position exactly. I'm not sure it makes a whole lot of difference who's got the burden on that one because they have raised it. If I could briefly point out, the Empire decision was recently decided, and it is clearly not dispositive here. The facts in Empire are so different from this case. The facts in Empire, the alleged infringer was allowed to use the word Empire, which is just a common English word that the court pointed out. Honey badger don't care is not a common English word. That's my client's catchphrase that he made famous in his popular video because it really is creative genius. This is not a common English word like the word Empire. Also in Empire, the show's setting was in New York. That's the Empire State. That's clearly relevant. Thirdly, the whole show of Empire is about a music and entertainment conglomerate called Empire Enterprises. Using the name Empire, as the court pointed out, is just a figurative way of talking about what the show is about. That is entirely not this case. The Critter card has no theme at all. I can't decipher it. Mr. Drafe didn't testify what the theme was about. Like I said, honey badger don't care is not a popular English word. It's not a popular phrase. It's only popular because it's my client's catchphrase that he thought of, and he sold a lot of goods bearing that phrase. The facts of Empire are completely distinguishable. And finally, moving on to the explicitly misleading prong, I see I only have 20 seconds or so. I would submit that on this Critter card, the references to my client's video, Just Kill the Cobra, that's lifted directly from my client's narration. Rolling and Firing Ants, that's also lifted directly from my client's video. These are his words, essentially, that those are clear and explicit misleading indications of my client that he's affiliated with this card. I see my time is up, so I'd like to reserve some time for rebuttal. All right, thank you, Mr. Reebok. May it please the Court, good morning. Douglas Caudill appearing on behalf of the appellees in this matter. Contrary to what counsel just iterated, the Empire case is just a great synopsis of the law in this circuit and applies here. It states and refutes every point that plaintiff's counsel has raised. There is an expressive work here that triggers the Rogers test. The Rogers test has a very low threshold for artistic relevance, which we meet in this case. Counsel, let me tell you what the problem is. I think I agree with you that there is something expressive here. I don't think we'd be here fighting if this wasn't an interesting phrase. I don't think they would have had north of 80 million views of this video if there hadn't been something clever about pairing those phrases with the video. They were obviously able to sell some greeting cards and licensed T-shirts and other things. What bothers me about what your client did here in contrast to the other cases that have been decided under the Rogers test here is I don't see any value added. In Brown, yes, they did use Jim Brown's number and name and his identity with the Cleveland Browns, but it was incorporated into a much, much larger work in which there was a lot of other creative things going on. In Empire, yes, we're using a name. It's affiliated with a record company. There may be some concern about identification there, but it's in the context of a whole TV show, a whole season or multi seasons of a TV show in which it's been woven into that. I don't see anything here except just taking their phrase and putting a honey badger on the card. So where's the value added? The value added has to be taken in the context of the vehicle with which the expressive work is delivered. Here it's a greeting card. You don't have the luxury of a season of television within which to reveal a longstanding plot or to have music. You have a quick, you know, an item that has to quickly get to the reader's attention, to the recipient's attention, and to convey that expressive idea in basically two pages. Right. It was just taken. I'm sorry? You just took it. No. You have an idea of, as Judge Boggs was indicating. And Drape came up with this independently? Well, he doesn't recall how. He creates thousands of cards a year. And does that seem credible to you? It may be perfectly credible, but he doesn't remember. Does it seem perfectly credible that he came up with it independent of Mr. Randall's video? Well, you have to remember that Mr. Drape gets from the greeting card company these pitch ideas, and then from those pitch ideas creates a card. And that is what needs to be protected under the First Amendment is Mr. Drape's idea on the card, in the card, and the way he portrays that card to let people know on their birthday, hey, we don't give a hoot. What if he had a greeting card of a can of Coke, a photograph of a can of Coke, and inside it said, you deserve a break today. Happy birthday. I would still say that that is. Perfectly protected under the Rogers Doctrine? I'm about perfectly protected, but it's not. What's the difference between that case and this case? Because there is no. Coke has a trademark in their can. Coke has a trademark in their saying. There is no trademark in the saying that was utilized in this case. So you have an idea that you can express. And similarly, Andy Warhol with his Campbell's Soup can was able to portray that, and yet it's just a copy of Campbell's Soup. That was protected. That's protected. But there was some value added. The value added was what? It's the same as. You changed the colors. There's some artistic texture to this. It's not a photograph of a Coke can. Well, in here you have Mr. Drape's drawings of the honey badger. You have Mr. Drape's presentation of it. When you have the greeting card and you open it up and you think it's like a happy birthday card and then you get this sarcastic saying in there, he adds humor in that way to putting it into a context other than the videotape within which. So he was not using the same honey badger pictures that your adversary's client was? He created the pictures on there. It wasn't the photograph from YouTube. So that's the value added. That's the difference. And so that's where you get the artistic relevance. And, again, in the circuit it has to be a smidge more than zero to get that connection. And that's what we submit was shown, and that's what the district court agreed. The smidge in your argument is the fact that on the inside there was an illustration of a honey badger? Yes. And the way it's presented in terms of the context of the greeting cards is different than the videotape of a narrator over an animal out in the wild. Can I ask you? I'm sorry. Go ahead. I think you're making perfectly reasonable and rational arguments, but why aren't they? Why isn't this a jury question? I guess that's where I get stuck in terms of your position before us. Because in order to have the full First Amendment protection, the Rogers test came into play, and that's why you get out of the sleek craft confusion dialogue that you would have ordinarily in a case that would go to a jury. So we want a court to come in and say, in this balancing test between the First Amendment and the use of a trademark, we say that in this particular case the First Amendment has to trump the trademark protection. And that's why it's not really a jury question. Ever? Ever? That's what I'm trying to figure out. Because if you're saying that there are cases that are close enough that they can go to a jury, this strikes me as one that's likely going to fall in that category. So are you taking the position that this is always a question of law that the court must resolve? I think the only case that I have come across is the Parks case, which I consider, notwithstanding Judge Boggs' presence here today from the Sixth Circuit, he wasn't on the panel, to be an anomaly. And also that one is a right of publicity case, which is different than what we have here in terms of the expressive work that's involved. Didn't the court there apply the exact same Rogers test that we're trying to struggle with here? I'm not sure how it applied it. In a roundabout way, I guess it did. But what it found there that's critically different than what we have here is the court found a tribal issue on whether there was no artistic relevance. Right. And I'm saying that that seems to me, just as in that case here, there's a jury question as to that. As I said, you've made perfectly good arguments as to why that's not the case, but maybe a jury would disagree with that. Judge Wofford, maybe to get you off of that median a little bit, in the Rosa Parks case, the reason that the court found a tribal issue as to no artistic relevance was because the outcast member who was involved in creating the song said there was none. So what you have there is a situation where you just have the name on a song, which is out there to, in a way, attract the audience, which is different than a greeting card, because in the greeting card here, it's not, as to what might be on the inside. And then you have the use of the term on the inside, and that pushes you over the zero artistic relevance. So making it a punchline is, in effect, it's a punchline from comedic sense. Right. Is that what makes it relevant, artistically relevant? It does, Your Honor, and that's what the hook is, is there just has to be some connection in terms of artistic relevance to the use of the term. And here it's implementing it into a card that conveys various expressive ideas, not only of the artist, but also on behalf of the donor of the card and on behalf of the recipient. What if they had a card that had a photo of Rodney Dangerfield on it, the comedian, and inside it said, I don't get no respect, but have a happy birthday or have a nice day or something? Your Honor, again, it's if you just have a picture and you're using the picture, then you get it. But even still, in Brown, that's what they did with Jim Brown. No, they had a whole video. You didn't even have to select the Cleveland Browns. You didn't even have to play the Cleveland Browns. You didn't ever have to see Jim Brown. But here, again, the difference is the length of time that you have and the options you may have in the video game just are not conducive when you have a small yet equally expressive vehicle in the greeting card. So you can't say, well, you didn't have a plot, because how are you going to have a plot on a greeting card? You really didn't answer my question. You moved very deftly off of it. Thank you, Your Honor. And, again, it's a situation where that particular use of Rodney Dangerfield, I would say, unless you could do something like what Mr. Drape and the greeting cards in this case have done. You've argued that the greeting card itself is the value added. That was the argument that you made when I asked you this question in the abstract at the beginning of your argument. So now I've given you the Rodney Dangerfield example, and aren't you just going to have to stick with the fact that they put it into a greeting card and that is the artistic, that's the value added? Well, it's part of the value added. The value added is also what the artist did with the greeting card. So it's a little bit more beyond what, if that's all I said before, I meant it in the context of that particular question. I apologize if I misled you. But in the context of an expressive work and artistic relevance, you look at the entirety of what was done with the greeting card and the package that was done with it, and that is what makes it artistically relevant. In the Rodney Dangerfield example, I don't know if this is part of the hypothetical, that would it make a difference if the phrase, I don't get no respect, is trademarked, or if it was trademarked with the picture? I think it would make it tougher to defend. It would. And here we don't have that. And here we have, again though, the threshold of meeting no artistic relevance I think has to be set aside. In applying that part of the Rogers test, can you compare it to the original? That is, does the original have any artistic relevance? I don't know whether they would admit that it has no artistic relevance. I would kind of think the two would be equivalent questions. Does that make any sense? They may, Your Honor. They may. But, again, I think the focal point here is what my clients did in the greeting card to constitute artistic relevance. And what they did was sufficient to get over the more than 0% that this court finds. And what they did was, that was the choice in the selection of the picture of the honey badger? Selection of the... The type font on the phrase inside? No, the use in terms of the idea, the expressive idea regarding birthdays, Halloweens, even the critter card where it's like, what is this? It's something intriguing because you have a blank and then it's like, we don't care. Is that different because the t-shirt, for example, just says it to the whole world. Maybe the wearer doesn't care, whereas here you don't care about elections, birthdays, Halloweens, Beyonce. The meteor is coming, the honey badger don't care. Correct, Your Honor. And you're providing an audience the ability to then share that idea with others. It's like, hey, I don't care about the election. Hey, I don't care about your birthday. Hey, you think you're all that? Not really. And so it's in that context that you have artistic relevance. Would it be more relevant if it said, you know, Trump won or Hillary lost? I don't think so, Your Honor. I think the idea is we don't care. We don't care who won. We don't care who lost. We just are apathetic about everything, whether it's your birthday, Halloween, or otherwise. Unless the Court has any questions on the other prong about deliberate, we'll go ahead and submit. Okay. Thank you, Mr. Kolodell. Thank you. Mr. Reback, you have some time. Just let me break in. Would you agree or disagree that if it was, in a sense, explicitly political, Trump won or Hillary lost, Honey Badger don't care, it would still not have any artistic relevance? That's correct, Your Honor. There's two factual inaccuracies I want to point out. On one of the defendant's cards, it just says, it's your birthday. And on the inside, it says, Honey Badger don't give my client's trademark. There's no image of a Honey Badger. It's not his trademark, right? Because only the don't care is trademarked. That's correct, Your Honor. My point is that there's no image of a Honey Badger or any other text or anything at all besides my client's trademark on the inside of this card. Secondly, counsel talked about an art target, how Mr. Drape receives art targets and does thousands of cards in response to an art target. At his deposition, Mr. Drape was asked about art targets. Okay, and you never discussed any time what the purpose of an art target was with someone from Recycled Greetings? His answer, no. And on and on and on, this is cited in the record. Well, do you know what the purpose of an art target is? His answer, I don't know. So these are all factual inconsistencies that go to the veracity or lack thereof of Mr. Drape's testimony that should be put before a jury. And to conclude, I would like to say if this ruling stands today, it really gives carte blanche to any greeting card company to use another's trademark on the inside of a card. If Mr. Drape wanted to do a greeting card that said, Happy Birthday, and then on the inside of the card it said, Go Cougars, referring to BYU, or Go Golden Bears, referring to Cal, and I'm assuming that those are trademarked by the universities, what's to stop him or any greeting card company from just misappropriating to use and capitalize off the cachet of someone's popular trademark? Nothing. It's giving any greeting card company free reign to do that. And really, in conclusion, Mr. Gordon, my client, is a creative genius. He had a bolt of lightning, 86 million views on YouTube, was basically a celebrity around the country for about three years, and he had a brief window of time, really, to strike while the iron's hot on that, and he should be the one, he, not the defendants in this case, to capitalize off his goodwill. He, Mr. Gordon, should be the one to capitalize off his popular phrases, his hard work, his creative genius. Why should the defendant corporations, after they received a pitch from Mr. Gordon's licensing agent, and their parent company refused it, and then what do you know, six months later, they're making these cards? My point in all this is that Mr. Gordon should really be the one to capitalize off of his genius, not the defendants. Thank you, Your Honor. Thank you. We thank counsel for the argument.
judges: Boggs, Bybee, Watford